## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES CARPENTER,**                          **CIVIL ACTION**
     **Plaintiff**

**VERSUS**                                       **NO.  19-13208**

**DEB HAALAND, SECRETARY,**            **SECTION: "E" (2)**
**U.S. DEPARTMENT OF THE INTERIOR,**
     **Defendant**

## ORDER AND REASONS

Before the Court is the motion by the Deb Haaland, in her official capacity as the Secretary of the United States Department of the Interior ("DOI" or the "Government"),[1] for summary judgment on Plaintiff's retaliation, sex discrimination, and hostile work environment claims.[2] For the reasons that follow, the motion is **GRANTED.**

## PROCEDURAL BACKGROUND

On November 13, 2017, Plaintiff contacted a counselor with the Equal Employment Opportunity Office ("EEO") to register complaints about sex discrimination and retaliation at his employment with the Bureau of Oceans and Energy Management ("BOEM").[3] On February 7, 2018, the EEO sent a letter to Plaintiff's attorney informing him that it would begin an investigation into the allegations.[4] The EEO issued Plaintiff a Notice of Final Interview dated December 12, 2017 and received by him on December 20, 2017.[5] On December 28, 2017, Plaintiff timely filed a formal complaint with the EEO,

---

[1] David Bernhardt is no longer the Secretary of the Interior. It is **ORDERED** that the Clerk of the Court restyle the caption of this case, as indicated above, in accordance with Fed. R. Civ. P. 25(d). The parties should style all future pleadings accordingly.
[2] R. Doc. 71. Plaintiff opposes the motion. R. Doc. 92.
[3] R. Doc. 31-6 at 3.
[4] *Id.*
[5] *Id.*

which was acknowledged on January 9, 2018.[6] The Government does not challenge the administrative exhaustion of Plaintiff's Title VII claims.

On October 21, 2019, Plaintiff filed claims of retaliation, sex discrimination, and hostile work environment in this Court.[7] On December 22, 2020, the Government filed the instant motion seeking summary judgment in its favor on all of Plaintiff's claims.[8]

## FACTUAL BACKGROUND

The following facts are not in dispute. On December 25, 2016, Plaintiff began his employment with BOEM.[9] He was hired by George Tropiano[10] for a term appointment capped at one year (until December 24, 2017),[11] in accordance with federal civil service regulations allowing for term employments.[12]

In January 2017, a female employee brought a complaint against Tropiano to Michael Celata, BOEM's Regional Director for New Orleans.[13] BOEM's Deputy Regional Director Barry Obiol opened an administrative investigation into Tropiano's conduct (the "Tropiano Investigation").[14] In July 2017, another employee reported additional misconduct by Tropiano.[15]

Thirteen employees were interviewed during the Tropiano Investigation, including Plaintiff. Plaintiff was interviewed on September 26, 2017.[16] Tropiano was not disciplined at the conclusion of the Tropiano Investigation.[17]

---

[6] *Id.*
[7] R. Doc. 1.
[8] R. Doc. 31-1 at 7.
[9] R. Doc. 31-8 at ¶ 2; R. Doc. 46 at ¶ 2.
[10] R. Doc. 31-8 at ¶ 4; R. Doc. 46 at ¶ 4.
[11] R. Doc. 31-8 at ¶ 7; R. Doc. 46 at ¶ 7.
[12] R. Doc. 31-8 at ¶ 8; R. Doc. 46 at ¶ 8. *See* 5 CFR § 316.301 and 316.304.
[13] R. Doc. 31-8 at ¶ 13; R. Doc. 46 at ¶ 13.
[14] R. Doc. 31-8 at ¶ 14; R. Doc. 46 at ¶ 14.
[15] R. Doc. 31-8 at ¶¶ 15-17; R. Doc. 46 at ¶ 15-17.
[16] R. Doc. 31-8 at ¶¶ 19, 21; R. Doc. 46 at ¶ 19, 21.
[17] R. Doc. 31-8 at ¶ 25; R. Doc. 46 at ¶ 25.

On July 11, 2017, Tropiano reminded his BOEM Risk Management Operations Group ("RMOG") team about the protocol for handling decision memos and reports.[18] This was based on a policy Tropiano emailed his RMOG team in June 2016 directing all decision memos and reports be reviewed by both the Deputy Program Manager and Tropiano before being sent to the Office of the Regional Director ("ORD").[19] On August 28, 2017, Tropiano met with Plaintiff to discuss these procedures and the need for Tropiano to approve Plaintiff's work product before it was sent to ORD.[20]

Tropiano sent Plaintiff a Google Calendar invitation to a June 5, 2017 meeting at 11:00 a.m. at an address of a New Orleans gay bar.[21] The Government attached a screenshot of the invitation to its motion.[22]

On October 2, 2017, Plaintiff's employment with BOEM was terminated.[23] Tropiano terminated only one Tropiano Investigation interviewee—Plaintiff.[24] Plaintiff gave the investigators a signed written summary on October 25, 2017 and an addendum on October 27, 2017.[25]

## **STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[18] R. Doc. 31-8 at ¶ 28; R. Doc. 46 at ¶ 28.

[19] R. Doc. 31-8 at ¶ 27; R. Doc. 46 at ¶ 27.

[20] R. Doc. 31-8 at ¶ 29; R. Doc. 46 at ¶ 29.

[21] R. Doc. 42 at 7; R. Doc. 31-6 at 30.

[22] R. Doc. 31-6 at 30. The Government further attaches a declaration by a Bureau of Safety and Environmental Management IT information assurance specialist, Nelson Lee, who states the screenshot of the invitation appears to have been manipulated because of the absence of a checkmark by an event organizer's (Tropiano) name. Lee states a checkmark should always appear but suggests that it might have been "sophistically manipulate[d]." R. Doc. 31-6 at 29. For the purposes of this motion, the Court will assume the screenshot is authentic.

[23] R. Doc. 31-8 at ¶ 2; R. Doc. 46 at ¶ 2.

[24] R. Doc. 31-8 at ¶ 26; R. Doc. 46 at ¶ 26.

[25] R. Doc. 31-8 at ¶ 23; R. Doc. 46 at ¶ 23. Plaintiff disputes the difference between his written statements and the statements given during the Tropiano Investigation interview. *Id. See* R. Doc. 47 (Plaintiff's affidavit).

of law."[26] "An issue is material if its resolution could affect the outcome of the action."[27] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28] All reasonable inferences are drawn in favor of the non-moving party.[29] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[30]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[31] To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[32] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[33]

---

[26] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[27] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[29] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[30] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

[31] *Celotex*, 477 U.S. at 323.

[32] *Id.* at 331.

[33] *Id.* at 322–24.

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[34] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[35] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[36] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[37]

## LAW AND ANALYSIS

### I.     Plaintiff fails to establish a viable retaliation claim.

Count one of Plaintiff's complaint is for retaliation against him because he engaged in protected activities.[38] A plaintiff may use either direct or circumstantial evidence to

---

[34] *Id.* at 331–32 (Brennan, J., dissenting).

[35] *See id.* at 332.

[36] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[37] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[38] R. Doc. 1 at ¶ 11.

prove a case of intentional discrimination under Title VII.[39] "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[40] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does not apply.[41] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *McDonnell Douglas* burden-shifting analysis.[42] Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of discrimination.[43] If successful, the burden of production shifts to the defendant to show a legitimate and nondiscriminatory basis for the adverse employment decision.[44] Finally, the plaintiff must then show the defendant's proffered reason is pretextual or unworthy of belief.[45]

In order to determine which analysis to apply, the Court first looks to whether there is direct evidence of intentional discrimination. In this case, Plaintiff has not produced any evidence that, on its face, shows Defendant acted in a discriminatory way. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face."[46] In the absence of direct evidence showing Defendant's alleged discriminatory motive, Plaintiff relies on circumstantial evidence, and therefore the *McDonnell Douglas* framework applies.[47]

### A. Plaintiff's prima facie case of Title VII retaliation

Plaintiff alleges his termination was unlawful retaliation.[48] Title VII prohibits an employer from taking adverse employment action against an employee because he

---

[39] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).
[40] *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (1993).
[41] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)
[42] *Smith v. Touro Infirmary*, 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[43] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (applying *McDonnell Douglas* test).
[44] *Id.*
[45] *Id.*
[46] *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).
[47] *See Smith v. Touro Infirmary*, 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015).
[48] R. Doc. 1-1 at ¶ 51.

engages in a protected activity.[49] To establish a prima facie case of retaliation, a plaintiff must show that: (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action.[50] If Plaintiff succeeds in establishing a prima facie case, the Court then applies the *McDonnell Douglas* framework to weigh any reasons proffered by the Government for the adverse employment action.[51]

An employee has engaged in an activity protected under Title VII if he (1) "has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing" (the "participation clause") under Title VII, or (2) "*opposed* any practice made an unlawful employment practice by this subchapter" (the "opposition clause").[52] In this case, Plaintiff may establish he participated in a protected activity by showing (1) he participated in the Tropiano Investigation—an internal inquiry into two complaints of misconduct lodged against his boss, George Tropiano; or (2) he opposed an employment practice made unlawful under Title VII. The Court will evaluate this element of Plaintiff's prima facie case under both clauses.

In *Byers v. Dallas Morning News, Inc.*, a terminated White man brought suit against his employer for discriminatory retaliation on account of his race but failed to demonstrate he engaged in an activity protected by Title VII under either the participation or the opposition clause.[53] Byers accused his employer of treating his co-worker, a Black woman, more favorably. Although the plaintiff complained of disparate treatment while

---

[49] *Joseph v. Phillips*, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).
[50] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).
[51] *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).
[52] 42 U.S.C § 2000e-3(a) (emphasis added).
[53] *Byers v. Dallas Morning News, Inc.*¸ 209 F.3d 419 (5th Cir. 2000).

employed, he did not make a formal EEOC complaint until after his termination. The Fifth Circuit found Title VII's participation clause to be "irrelevant because [the plaintiff] did not file a charge with the EEOC until *after* the alleged retaliatory discharge took place" despite his internal complaints of race discrimination.[54] In this case, Plaintiff participated in an "administrative investigation" into Tropiano but did not make a formal EEO complaint until after he was terminated.[55] The Fifth Circuit has held that internal investigations not connected with formal EEOC charges generally are not protected by the Title VII's participation clause.[56] Plaintiff has not established the first element of his prima facie case based on his participation in the Tropiano Investigation.

Plaintiff also may show he participated in a protected activity by opposing an employer's unlawful practice.[57] The *Byers* court held to oppose an unlawful practice the plaintiff did not need to prove the conduct was "actually unlawful, but only that he had a 'reasonabl[e] belief that the employer was engaged in unlawful employment practices." Claims may not be "unsubstantiated, conclusory, and speculative," and must carry at least some evidence of causation.[58] The reasonable belief standard helps "effectuate the policies of Title VII and [avoids] the chilling effect that would otherwise arise."[59]

In Byers the plaintiff believed his employer was discriminating based on race in violation of Title VII. Byers produced evidence that on at least four occasions he opposed acts of racial discrimination committed by his employer, once against other employees and three times against himself. The court evaluated the plaintiff's allegation and the

---

[54] *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427-28 (5th Cir. 2000).
[55] R. Doc. 31-1.
[56] *EEOC v. Rite Way Serv., Inc.,* 819 F.3d 235, 239 n.2 (5th Cir. 2016).
[57] *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981)).
[58] *Heggemeier v. Caldwell Cnty, Tex.,* 826 F.3d 861, 870 (5th Cir. 2016).
[59] *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981)

attached summary judgment evidence to determine whether it was "objectively reasonable" that the conduct the plaintiff opposed was rooted in discrimination.[60] The court found the plaintiff did not have a viable claim under the opposition clause even under the liberal standard that he have only a reasonable belief his employer engaged in unlawful employment practices.[61] With respect to each act of racial discrimination, Byers failed to present any evidence that other non-white employees were treated differently. When similarly situated employees are treated the same, the plaintiff's belief is not reasonable.[62] Nor did Byers counter the evidence presented by his employer to justify its actions. The Fifth Circuit found no evidence showing Byers' complaints were objectively reasonable.

In this case, Plaintiff argues he opposed conduct in violation of Title VII when he was interviewed in the Tropiana investigation on September 26, 2017.[63] On October 2, 2017, Plaintiff's employment with BOEM was terminated.[64] Only after his employment was terminated did Plaintiff give the investigators a signed written summary on October 25, 2017 and an addendum on October 27, 2017,[65] so these acts cannot serve as the basis for a retaliatory discharge.

During August and September 2017, Plaintiff was counseled at least twice for failing to follow the protocol for handling decision memos and reports.[66] On August 28,

---

[60] *Byers*, 209 F.3d at 428.

[61] *Id.* at 428.

[62] *Ellis v. Compass Group USA, Inc.*, 426 Fed.Appx. 292, 297 n.1 (5th Cir. 2011) ("If Ellis was truly operating under the objectively reasonable belief that Chartwells was engaging in unlawful employment practices, it would be odd for her to approach persons similarly situated and obtain statements claiming that they were *not* being treated in the same manner as Ellis (i.e., that they were not being overworked as Ellis was).").

[63] R. Doc. 31-8 at ¶¶ 19, 21; R. Doc. 46 at ¶ 19, 21.

[64] R. Doc. 31-8 at ¶ 2; R. Doc. 46 at ¶ 2.

[65] R. Doc. 31-8 at ¶ 23; R. Doc. 46 at ¶ 23. Plaintiff disputes the difference between his written statements and the statements given during the Tropiano Investigation interview. *Id. See* R. Doc. 47 (Plaintiff's affidavit).

[66] R. Doc. 31-8 at ¶ 28; R. Doc. 46 at ¶ 28.

2017, Tropiano met with Plaintiff to discuss these procedures and the need for Tropiano to approve Plaintiff's work product before the work was sent to the ORD.[67] A female co-worker filed a complaint against Plaintiff on September 15, 2017  and expressly stated, "[t]his is an extremely hostile work environment. . . Chuck request [*sic*] was unreasonable. . . This is unacceptable and inappropriate behavior in a work environment. I have over looked and ignored some of the offensive, aggressive, demeaning and belittling things Chuck has said to myself and others in the office. But I cannot continue to walk on eggshells at work, unknowning [*sic*] if this is a good day or bad day for Chuck. . . I told Chuck to stop IMing me."[68] In that email, the complaining co-worker included a transcript of an instant messaging conversation with Plaintiff and a link to an image sent to her by Plaintiff that contained expletives.[69]

In his responses to the Defendants' Interrogatories, Plaintiff describes the investigation into Tropiano as being based on Tropiano's hoarding information to the detriment of the involved governmental entities, using the power of his office to take actions contrary to his employees best interests and welfare, which reduced productivity, and leaving a voice message for a female co-employee in an imperious and angry voice.[70] Byers' belief that this conduct was evidence of sex discrimination is not objectively reasonable.

Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not present sufficient evidence to show his belief that his termination was in retaliation for opposing sex discrimination was objectively reasonable. Plaintiff has not established the

---

[67] R. Doc. 31-8 at ¶ 29; R. Doc. 46 at ¶ 29.
[68] *Id*. at 8.
[69] *Id*. at 10.
[70] Doc. 31-7.

first element of his prima facie case—that he engaged in protected activity because he opposed an unlawful practice.

For the purpose of completeness, the Court will examine the second and third elements of Plaintiff's prima facie case. Plaintiff argues the second element of a prima facie case is satisfied because an adverse employment action was taken against him when Tropiano fired him.[71] "An adverse employment action is one that 'a reasonable employee would have found. . . [to be] materially adverse,' which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[72] In this case, the second element is satisfied because Plaintiff's alleged termination of employment is materially adverse. Termination would likely dissuade a reasonable worker from willingly participating in an investigation on workplace misconduct.

With respect to the third element of Plaintiff's prima facie case, a causal link between the adverse employment action and the protected activity can be satisfied "simply by showing close enough timing between [the] protected activity and [the] adverse employment action."[73] "At the prima facie [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."[74] In *Garcia v. Professional Contract Services, Incorporated*, the Fifth Circuit held that two and a half months between the protected activity and adverse employment action was close enough.[75] In this case, Plaintiff was

---

[71] R. Doc. 42 at 7.
[72] *Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).
[73] *Abbood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459 (5th Cir. 2019) (citing *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)). Plaintiff does not need to show "but for" causation to make his prima facie case. *Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).
[74] *Garcia*, 938 F.3d at 243.
[75] *Id.*

interviewed as part of the Tropiano Investigation on Tuesday, September 26, 2017 and was terminated on Monday, October 2, 2017.[76] Less than a week passed between Plaintiff participating in the Tropiano Investigation and Plaintiff's termination. The proximity of events establishes the causal element of a prima facie case of retaliation.

Because Plaintiff did not establish the first element, that he participated in a protected activity, Plaintiff has not made a prima facie case of retaliation. For the sake of completeness, the Court will apply the *McDonnell Douglas* framework.[77]

## B. The Government has satisfied its burden of showing a legitimate reason for terminating Plaintiff.

If the plaintiff does make a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.[78] Under the second prong, "[t]he employer's burden is only one of production, not persuasion, and involves no credibility assessment."[79] The defendant must articulate a legitimate, nondiscriminatory, or nonretaliatory reason for its employment action.[80] In this case, the Government points to Plaintiff's termination letter which states he was being fired for (1) failing to comply with BOEM's reporting protocols and (2) engaging in an inappropriate online conversation with a co-worker.[81]

The Government argues it had legitimate, nondiscriminatory reasons for terminating Plaintiff and has provided the Court with persuasive summary judgment evidence in support of its claim. Tropiano sent an email to Plaintiff regarding office protocols on July 11, 2017 stating "[j]ust a reminder to follow the below process that was

---

[76] R. Doc. 31-8 at ¶¶ 2, 21; R. Doc. 46 at ¶¶ 2, 21.

[77] The Government argues the Tropiano Investigation was merely administrative and not brought under any EEO charge. R. Doc. 31-1 at 16.

[78] *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)).

[79] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

[80] *Id.*

[81] R. Doc. 31-4 at 11.

effective June 26, 2017."[82] In an affidavit, Tropiano states, "[o]n August 28, 2017, I met with Plaintiff to remind him of the quality control process protocol of sending work to me for review and approval prior to him sending his work on to ORD."[83] Following that meeting, Tropiano sent an email to Plaintiff stating, "[t]his is the second time you have not followed the protocol of briefing your supervisor, [*sic*] the prior time related to providing Risk Policy a paper that was not reviewed or approved by your supervisor. During the first incident we had a meeting regarding this issue and you were informed of this protocol. You indicated that you understood and that you would follow the protocol."[84] Plaintiff responded to the email by saying he would "follow these direct instructions to the letter."[85]

The Government also produced an email in which Plaintiff's co-worker complained about him to Tropiano and expressly stated on September 15, 2017, "[t]his is an extremely hostile work environment. . . Chuck request [*sic*] was unreasonable. . . This is unacceptable and inappropriate behavior in a work environment. I have over looked and ignored some of the offensive, aggressive, demeaning and belittling things Chuck has said to myself and others in the office. But I cannot continue to walk on eggshells at work, unknowning [*sic*] if this is a good day or bad day for Chuck. . . I told Chuck to stop IMing me."[86] In that email, the complaining co-worker included a transcript of an instant messaging conversation with Plaintiff and a link to an image sent to her by Plaintiff that contained expletives.[87] In an affidavit, Tropiano stated, "a female employee on the RMOG team sent an email to me complaining that she was working in a hostile work

---

[82] R. Doc. 31-5 at 4.
[83] *Id* at ¶ 6.
[84] *Id*. at 6.
[85] *Id*. at 6.
[86] *Id*. at 8.
[87] *Id*. at 10.

environment. She was complaining about Plaintiff being unreasonable in asking her to assist him with work. She also claimed that Plaintiff had sent her an offensive Instant Message. . ."[88] In an affidavit, Diane Chisholm, a specialist in BOEM's Employee and Labor Relations Branch of the Human Resources Division, stated that she was informed of the inappropriate messages and that she advised Tropiano to conduct "a fact-finding inquiry" and that he could "terminate Plaintiff based on his conduct."[89]

The Court finds the Government has articulated nondiscriminatory reasons for terminating Plaintiff and accordingly met its burden of production.

### C. Plaintiff fails to show a conflict in substantial evidence with respect to the Government's legitimate reason for his termination.

If the employer states a nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to prove the employer's given reasons are a pretext for retaliation.[90] The plaintiff establishes pretext by showing the adverse action would not have occurred "but for" the employer's retaliatory motive.[91] At the pretext stage, the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar* requires more than mere temporal proximity.[92] To avoid summary judgment, a plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.[93]

"[O]nce the employer offers a legitimate, nondiscriminatory reason ... the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."[94]

---

[88] *Id.* at 2.
[89] R. Doc. 31-4.
[90] *Id.*
[91] *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517 (2013)).
[92] *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2533 (2013).
[93] *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 560 Fed. Appx. 328, 333 (5th Cir. 2014) (citing *Long v. Eastfield Coll.,* 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted))
[94] *McCoy v. Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

For example, in *Wallace v. Seton Family Hospitals*, the Fifth Circuit held an employer's shifting explanations for firing plaintiff, the suspicious temporal proximity between plaintiff's protected activity and termination, as well as evidence plaintiff was disciplined differently from other employees, was sufficient evidence of pretext.[95] "Again, temporal proximity alone is insufficient to prove but for causation" unless it is "very close" in "some instances."[96]

In response to the Government's allegation that he repeatedly failed to comply with BOEM's reporting protocols, Plaintiff states in an affidavit "[a]t no time was the quality of my work or performance questioned regarding the product I produced for the Agency."[97] The Government provided emails and affidavits showing BOEM repeatedly corrected Plaintiff's failure to follow internal reporting protocols. Tropiano sent an email to Plaintiff stating "[j]ust a reminder to follow the below process."[98] In an affidavit, Tropiano states, "I met with Plaintiff to remind him of the quality control process protocol of sending work to me for review and approval prior to him sending his work on to ORD."[99] Tropiano later emailed Plaintiff stating, "[t]his is the second time you have not followed the protocol of briefing your supervisor , [*sic*] the prior time related to. . . a paper that was not reviewed or approved by your supervisor. During the first incident we had a meeting regarding this issue and you were informed of this protocol."[100] Plaintiff

---

[95] *Wallace v. Seton Family of Hosps.*, 777 F. Appx. 83, 93 (5th Cir. 2019).
[96] *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (2007) (noting "(1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation" (citing *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001))).
[97] R. Doc. 47 at 8.
[98] R. Doc. 31-5 at 4.
[99] *Id*. at ¶ 6.
[100] *Id*.

responded to the email by saying he would "follow these direct instructions to the letter."[101]

In response to the Government's allegation that he engaged in an inappropriate online conversation with a co-worker, Plaintiff states in an affidavit he has "no knowledge of any female employee complaining about me creating a hostile work environment or that I was being unreasonable or being offensive, demeaning or aggressive towards any female employee."[102] The Government provided emails and affidavits detailing the co-worker's complaints against Plaintiff. The Government provided an email in which the complaining co-worker expressly stated, "This is unacceptable and inappropriate behavior in a work environment. I have over looked and ignored some of the offensive, aggressive, demeaning and belittling things Chuck has said to myself and others in the office. . . I told Chuck to stop IMing me."[103] In that email, the complaining co-worker included a transcript of an instant messaging conversation with Plaintiff and a link to an image with expletives that Plaintiff had sent her.[104] In an affidavit, Tropiano stated, "a female employee on the RMOG team sent an email to me complaining that she was working in a hostile work environment. She was complaining about Plaintiff being unreasonable in asking her to assist him with work. She also claimed that Plaintiff had sent her an offensive Instant Message. . ."[105] In an affidavit, Chisholm stated that she was informed of the inappropriate messages and that she advised Tropiano to conduct "a fact-finding inquiry" and that he could "terminate Plaintiff based on his conduct."[106]

---

[101] *Id.*
[102] R. Doc. 47 at ¶ 6.
[103] R. Doc. 31-5 at 8.
[104] *Id.* at 10.
[105] *Id.* at 2.
[106] R. Doc. 31-4.

The Government has provided summary judgment evidence that Plaintiff's work performance was criticized repeatedly for violations of reporting protocols. The Government also provided summary judgment that a co-worker complained about Plaintiff's conduct. Plaintiff fails to show "a conflict in substantial evidence" that may lead a jury to believe the Government's motive was illegal retaliation, rather than a legitimate cause. Plaintiff provides no evidence to show the Government's reasons for his termination were a pretext. Instead, in response to the Government's evidence about the co-worker's complaints against Plaintiff, Plaintiff offers an affidavit stating he has "no knowledge" of such reasons.[107] Plaintiff has failed to provide substantial summary judgment evidence to create a disputed issue of material fact with respect to the reason for his termination. Plaintiff relies only on the temporal proximity of the protected activity and his termination to support his claim of retaliation under Title VII. Although this is sufficient for Plaintiff to state a prima facie case, it is not sufficient to show the Government's reasons for his termination were a pretext. Accordingly, the Government's motion for summary judgment is granted on Plaintiff's claim of retaliation under Title VII.

## II.   Plaintiff was not terminated because of his sex.

Count two of Plaintiff's complaint is that he suffered sex discrimination under Title VII when he was terminated and that the Government's stated reasons for his termination are "pretext to hide the Defendant's discriminatory animus."[108] Although his complaint alleges he was terminated "for following a legally promulgated command" (participating in the Tropiano Investigation),[109] Plaintiff argues in his opposition to the motion for

---

[107] R. Doc. 47.
[108] R. Doc. 1 at 3.
[109] *Id.* at ¶ 7.

summary judgment that he was wrongfully terminated on account of his sex, in violation of Title VII.[110] In support of this argument, Plaintiff states he

> received a Google Calendar invitation to attend a meeting with his supervisor, Mr. Tropiano, during work hours at a gay bar in New Orleans. After Mr. Carpenter rejected this unwelcome invitation, Mr. Tropiano continued to subject Mr. Carpenter to a hostile work environment and this ultimately led to his firing.[111]

The *McDonnell Douglas* framework also applies to Plaintiff's retaliation claim.[112] In order to make a prima facie case of disparate treatment sex discrimination, Plaintiff must show he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[113] Of these four elements, for purposes of this motion the Government challenges the fourth. The Government argues Plaintiff cannot "establish that he was replaced by someone outside of his protected class or that other similarly situated employees were treated more favorably."[114]

Plaintiff produced no summary judgment evidence showing a person of a different sex replaced him following his termination. Plaintiff also has not shown that his co-workers of the opposite sex were treated more favorably than he was. The Government points to Plaintiff's responses to its interrogatories in which Plaintiff stated Tropiano directed his alleged abusive behavior towards all staff.[115] Plaintiff alleges Tropiano spoke

---

[110] R. Doc. 42 at 7.
[111] *Id.*
[112] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).
[113] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *See also Abarca v. Metro Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (holding that plaintiff had to show he was treated "treated differently from others similarly situated").
[114] R. Doc. 31-1 at 20.
[115] R. Doc. 31-7 at 4-5.

to a female employee in a "very imperious and angry voice."[116] Plaintiff fails to make a prima facie case that he was wrongfully terminated because of his sex.[117] Accordingly, the Court will not analyze the other prima facie elements of this claim or proceed to evaluate this claim under the *McDonnell Douglas* framework. The Government is entitled to judgment as a matter of law on Plaintiff's Title VII sex discrimination claim.

### III. Plaintiff's hostile work environment claim fails because the harassment complained of was neither severe nor pervasive.

Count three of Plaintiff's complaint brings a claim for "hostile and abusive working environment."[118] Plaintiff alleges he was subject to a hostile work environment when "Tropiano hoarded information" "[went] on power trips," and "assign[e]d things to do without assigning a task hierarchy."[119] Plaintiff also has raised the isolated incident of Tropiano inviting Plaintiff to meet at an address which is a New Orleans gay bar.[120]

"[T]o avoid summary judgment at the prima facie stage, a plaintiff must present evidence that creates a genuine dispute of material fact as to whether 'the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[121],[122] A hostile

---

[116] *Id.* at 5.

[117] Even if Plaintiff made a prima facie case of discrimination on account of his sex as a man, his claim would fail to survive the *McDonnell Douglas* framework because the Government has articulated legitimate, nondiscriminatory reasons for terminating him. As explained above, Plaintiff has failed provide any evidence that the Government's legitimate reasons are a pretext for the alleged discrimination against him as a man.

[118] R. Doc. 1 at 4.

[119] R. Doc. 42-2 at 4-5.

[120] R. Doc. 31-6 at 30.

[121] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 1334, 1341 (10th Cir. 1998)).

[122] The *McDonnell Douglas* burden-shifting analysis—which allows the Government to proffer a legitimate, nondiscriminatory reason behind its actions—does not apply to this claim because there the Government may not offer a legitimate reason for creating such an environment. *See EEOC v. Bass Pro Outdoor World, LLC*, 35 F.Supp.3d 836 (S.D. Tex. July 30, 2014) ("hostile work environment claims are not proven using McDonnell Douglas or any other burden-shifting scheme").

work environment results from discrimination that does not culminate in a tangible employment action.[123] A hostile work environment

> involves repeated conduct ... [that] occur over a series of days or perhaps years and ... [where] a single act of harassment may not be actionable on its own, [while] a discrete-acts claim involves a single act of discrimination such as termination, failure to promote, denial of transfer, or refusal to hire. [A] plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard.[124]

A plaintiff asserting a hostile work environment claim under Title VII must show he: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in a protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the Government knew or should have known of the harassment in question and failed to take prompt remedial action.[125] All circumstances related to the employment "must be taken into consideration" to deem a work environment sufficiently hostile.[126]

For the purposes of this motion, the parties do not dispute Plaintiff belongs to a protected group as a man asserting sex discrimination,[127] nor do the parties dispute whether Plaintiff was subjected to unwelcome harassment. Instead, the Government argues it is an undisputed fact that the conduct did not affect a term, condition, or privilege of Plaintiff's employment, and it is entitled to judgment as a matter of law.

The Government argues the harassment complained of was not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Plaintiff offers no summary

---

[123] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998).
[124] *Rowe v. Jewell*, 88 F. Supp. 3d 647, 674 (E.D. La. 2015) (alterations in original) (internal quotations and citations omitted).
[125] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
[126] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).
[127] Plaintiff's own admission that Tropiano's harassment was directed to all staff, presumably regardless of sex, undermines the claim that the harassment was based on Plaintiff's status as a man. Plaintiff alleges Tropiano spoke to a woman employee in a "very imperious and angry voice." R. Doc. 42-2 at 5.

judgment evidence of sex discrimination other than his own response to the Government's interrogatory in which he stated he was once invited by Tropiano to a gay bar because he is male and that this invitation made him uncomfortable.[128]

"For sexual harassment to be actionable under Title VII, it must be sufficiently severe *or* pervasive to alter the conditions of the victim's employment and create an abusive working environment."[129] "[T]he test—whether the harassment is severe or pervasive—is stated in the disjunctive. An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment."[130] The Fifth Circuit uses an objective "reasonable person" standard to evaluate severity and pervasiveness.[131] "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[132]  In determining whether a work environment meets this standard, the court considers the totality of the circumstances, "including frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."[133]

Plaintiff states in his response to the Government's interrogatories, and the Government does not dispute, that "Tropiano invited [Plaintiff] to a gay bar during working hours on June 5, 2017."[134] In fact, the Government provided a screenshot of the

---

[128] R. Doc. 42-2 at 3.
[129] *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (emphasis added).
[130] *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007).
[131] *Acosta v. Boudreau & Thibodeau's Cajun Cookin' Inc.*, 2017 WL 3521595 at 3 (E.D. La. Aug. 16, 2017).
[132] *Faragher v. City of Boca Raton,* 118 S. Ct. 2275, 2283 (1998).
[133] *Id.*
[134] R. Doc. 31-7 at 3.

Google Calendar invitation by Tropiano with the address of a New Orleans gay bar to discuss "Petro Ventures Briefing Feedback from ORD."[135] Plaintiff does not allege or offer summary judgment evidence of additional instances of sexual harassment. A single calendar invitation with the address of a New Orleans gay bar is not severe sexual harassment and neither is it pervasive. Under the Fifth Circuit's standard, the alleged conduct is not sufficient to create a hostile work environment. "Title VII … is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory charges in the 'terms and conditions of employment.'"[136] Tropiano's alleged conduct is not "objectively and subjectively offensive," and it must be both to sustain a hostile work environment claim.[137]

Plaintiff has failed to show there is a genuine issue of disputed fact with respect to whether alleged sexual harassment altered a condition of his employment.[138] This claim fails as a matter of law.[139]

---

[135] R. Doc. 31-6 at 30.

[136] *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (quotations omitted).

[137] *Equal Emp't Opportunity Comm'n v. WC&M Enters., Inc.*, 496 F.3d 393, 399-400 (5th Cir. 2007) (citations omitted).

[138] Plaintiff oddly argues in his own opposition to the Government's motion, "Plaintiff's hostile work environment claim falls woefully short of this high standard. Accordingly, Plaintiff's claim of hostile work environment must fail." R. Doc. 42 at 6. The Court agrees.

[139] To the extent Plaintiff asserts a *retaliatory* hostile work environment claim for his participation in the Tropiano Investigation (*see* R. Doc. 42 at 5), the cause of action is not recognized under Fifth Circuit precedent. *Montgomery-Smith v. George*, 810 Fed.Appx. 252 (5th Cir. 2020) ("This circuit has not recognized a retaliatory hostile work environment cause of action, though twelve circuits have."); *Bryan v. Chertoff*, 217 Fed.Appx. 289, 293 (5th Cir. 2007) (declining to "recognize a retaliatory hostile work environment" cause of action).

## <u>CONCLUSION</u>

**IT IS ORDERED** that the motion for summary judgment by Deb Haaland, in her official capacity as the Secretary of the United States Department of the Interior, is **GRANTED.**

New Orleans, Louisiana, this 30th day of March, 2021.

**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**